IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
OHIO CIVIL RIGHTS COMMISSION,          :  CASE NO.  1:11-CV-623
                                        :
                          Plaintiff   :  MEMORANDUM OF OPINION AND
                                        :  ORDER GRANTING DEFENDANT'S
            -vs-                        :  MOTION TO DISMISS IN PART AND
                                        :  DENYING IN PART
                                        :
WELLS FARGO BANK, N.A.,                 :
                                        :
                          Defendant.  :
------------------------------------------------------  :


UNITED STATES DISTRICT JUDGE LESLEY WELLS

         On 23 January 2008, plaintiff Latonya Sykes-Jackson filed a charge against

Wells Fargo Bank, N.A. ("Wells Fargo") with the Ohio Civil Rights Commission

("OCRC").  This charge alleged discriminatory lending practices.  Based on the

allegations contained in the initial charge, the OCRC filed a complaint against Wells

Fargo in the Cuyahoga County, Ohio Court of Common Pleas on 10 February 2011.

         On 15 March 2011, Wells Fargo removed the case to this Court[1], and on 10 June

2011, Wells Fargo moved to dismiss the first amended complaint pursuant to Rules

12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure.  (Doc. 1, 9).  The plaintiff

opposed this motion to dismiss, and the defendant replied.  (Doc. 11, 13).

_____

         [1]This Court has now, and had when this action was commenced, original diversity jurisdiction
under 28 U.S.C. § 1332(a) because (i) the parties are citizens of different states, and (ii) the amount in
controversy exceeds $75,000.

The first amended complaint alleges five "reverse redlining" claims, all under Ohio state law.  Specifically, the first amended complaint asserts that Wells Fargo: 1) denied housing accommodations on the basis of race in violation of O.R.C. 4112.02(H)(1), 4112.02(J), and 4112.052; 2) discriminated against persons in the making or purchasing of loans, in the furnishing of services in connection with home ownership, and in the lending terms for the maintenance of housing accommodations in violation of O.R.C. 4112.02(H)(3) and (5), 4112.052, and 4112.02(J); 3) aided and abetted in unlawful, discriminatory lending practices in violation of O.R.C. 4112.02(J) and 4112.052; 4) engaged in a pattern or practice of unlawful discriminatory lending in violation of O.R.C. 4112.02(H)(1), (3), and (5); and 5) engaged in discriminatory lending practices that have a disparate impact upon African-American neighborhoods in violation of O.R.C. 4112.02(H)(1), (3), and (5), and 4112.02(J).

This Court will grant the defendant's motion to dismiss in part and deny it in part. Specifically, this Court dismisses each of the plaintiff's claims brought pursuant to O.R.C. 4112.02(H)(1), 4112.02(J), and 4112.052, and the plaintiff's disparate impact and pattern or practice claims brought pursuant to O.R.C. 4112.02(H)(3) and (5).  The plaintiff's reverse redlining claims alleging violations of O.R.C. 4112.02(H)(3) and (5), and contained within Count Two of the first amended complaint, state claims upon which relief can be granted and, therefore, will survive the defendant's motion to dismiss.

2

## I.      BACKGROUND

This case is about one thing, at least purportedly: discrimination.

On 24 January 2007, Ms. Sykes-Jackson executed a note ("Note") in favor of Assured Mortgage Services, LLC ("Assured"), payment of which was secured by a mortgage ("Mortgage") against 16305 Cloverside Avenue, Cleveland, Ohio 44128. (First amended complaint ¶25).  The Note has a variable rate beginning at 9.660%, a principal balance of $122,700, a prepayment rider, and is amortized over 40 years with a final balloon payment due on 1 February 2037.  (First amended complaint ¶26, 45).

 Assured assigned the Note to Conglomerated Mortgage Services ("Conglomerated"), and on 23 January 2007, the day prior to closing, Wells Fargo issued a Notice of Approval that it would purchase the Note if certain conditions were satisfied.  (First amended complaint ¶28, 29).  These conditions were met, and Wells Fargo purchased the Note and was assigned the Mortgage.  (First amended complaint ¶29, 30).  Subsequently, Wells Fargo began servicing the loan.  (First amended complaint ¶33).

The plaintiff alleges that Conglomerated, Assured, and the defendant, Wells Fargo, conducted the above business in an unlawful and racially discriminatory manner. Specifically, but not exhaustively, the plaintiff alleges that: 1) Wells Fargo used a business model that permits undercapitalized surrogate brokers with ties to the African-American community to close loans in their own name that are then underwritten, funded, and purchased by Wells Fargo; 2) Wells Fargo's business model or scheme of making and purchasing loans and terms and conditions of loans was based on race or the racial makeup of neighborhoods; 3) Wells Fargo used unjustifiably and arbitrarily

3

inflated property values and accepted mortgage loans in amounts that exceed the market value of the homes that secure them; 4) Wells Fargo authorized and approved the terms of high-cost loans and knew or should have known that the loan terms contained subjective finance charges and discretionary pricing policies that resulted in a higher amount of non-risk related credit charges; and 5) Wells Fargo misapplied payments and issued default notices to precipitate defaults.  (First amended complaint ¶3, 4, 42, 46, 49, 51, 54).  The defendant denies these allegations.

## II.    Standard of Review

The Court's task, in addressing a Rule 12(b)(6) motion, is to "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  Ashcroft v. Iqbal, 129 S.Ct.1937, 1951 (2009).  Pursuant to this standard, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Although the complaint need not contain "detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S.Ct. at 1949. As the Supreme Court explained in Iqbal: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. Following Twombly and Iqbal, it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A claim is plausible on its face if the

4

"plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).  Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

### III.    Analysis

Wells Fargo moved to dismiss the plaintiff's five counts and her claims contained therein, pursuant to Rules 12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure, asserting that each claim fails as a matter of law.  This Court will examine the defendant's legal contentions and their applicability to the plaintiff's claims.

The Court will grant the defendant's motion to dismiss in part and deny it in part. Specifically, the Court dismisses each of the plaintiff's claims brought pursuant to O.R.C. 4112.02(H)(1), 4112.02(J), and 4112.052, and the plaintiff's disparate impact and pattern or practice claims brought pursuant to O.R.C. 4112.02(H)(3) and (5).  The plaintiff's reverse redlining claims alleging violations of O.R.C. 4112.02(H)(3) and (5), and contained within Count Two of the first amended complaint, state claims upon which relief can be granted and, therefore, will survive the defendant's motion to dismiss.

5

**A. Do reverse redlining claims for discriminatory refinancing of a previously purchased property constitute a violation of O.R.C. 4112.02(H)(1)?**

The defendant argues that the plaintiff's claims under O.R.C. 4112.02(H)(1) should be dismissed because federal courts in this district (and Ohio state courts), have consistently held that O.R.C. 4112.02(H)(1) does not apply to an extension of credit to refinance a previously acquired dwelling.  This Court agrees and will therefore dismiss the plaintiff's claims brought under O.R.C. 4112.02(H)(1).

O.R.C. 4112.02(H)(1) states:

> It shall be an unlawful discriminatory practice: (H) For any person to do the following: (1) Refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin.

Based on the above statutory language the question is whether or not the "otherwise make unavailable" language encompasses the allegedly discriminatory refinancing in the present case.  In answering this question about Ohio state law, this Court will analyze federal case law.  Indeed, in Ohio Civil Rights Comm'n et al. v. Harlett, et al., 132 Ohio App.3d 341, 344 (1999), the court stated that "[w]hen interpreting O.R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance." Consequently, this Court may rely upon the federal case law under the Fair Housing Act to resolve the motion to dismiss as it relates to the plaintiff's claims under Ohio's equivalent fair housing statute in O.R.C. Chapter 4112.

In looking toward federal case law to interpret  4112.02(H)(1), this Court must first answer the threshold inquiry of whether 4112.02(H)(1) and 4112.02(H)(3), (5) are

6

always mutually exclusive.  In other words, if a plaintiff has a claim, which properly fits within the statutory language of 4112.02(H)(3) and (5), is he or she precluded under all circumstances from bringing the same claim under 4112.02(H)(1)?  The answer is no. The Sixth Circuit considered an analogous matter in the case of <u>Nationwide Mutual Insurance Co. v. Cisneros</u>, 52 F.3d 1351 (6th Cir.1995). There, the court was faced with the issue of whether § 3604(a) and/or (b) of the Fair Housing Act governed the issuance and cancellation of property insurance policies.  <u>Cisneros</u>, 52 F.3d at 1356. The court rejected the plaintiffs' argument that the phrase "otherwise make unavailable or deny" does not include any circumstances that do not directly affect the availability of housing. <u>Id.</u> at 1357. In doing so, the Court agreed with the decision in <u>N.A.A.C.P. v. American Family Mutual Insurance Co.</u>, 978 F.2d 287, 298 (7th Cir.1992), which held that the provisions in § 3604 and § 3605 overlap and are not mutually exclusive.  <u>Id.</u> The Court found that "the availability of property insurance has a direct and immediate affect on a person's ability to obtain housing and that, despite the assertions of property insurers otherwise, the FHA governs the business of property insurance."  <u>Id.</u> at 1355-60.

The next question is whether or not the plaintiff's claim of discriminatory refinancing in the present case fits within the above framework and can therefore be brought under 4112.02(H)(1) as well as 4112.02(H)(3) and (5).  The answer is no.

In considering a nearly identical issue, U.S. District Judge Nugent in <u>Eva v. Midwest Nat'l Mortg. Banc, Inc.</u>, 143 F. Supp. 2d. 862, 890-891 (N.D. Ohio 2001), stated that "research of the relevant cases indicates that courts expanding the 'otherwise unavailable' language . . . have generally done so in light of the ambiguity of the FHA to insurance coverage."  Judge Nugent further stated that "such is not the case

7

with home mortgages.  It is clear that Section 3504 relates to acquiring a home, while Section 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired."  In other words, although these two provisions of the FHA are not mutually exclusive, there will only be overlap when there is ambiguity over which section applies.  In the context of home mortgages, there is no such ambiguity, and therefore, no overlap.  Allegations of reverse redlining for refinancing do not set forth a claim under O.R.C. 4112.02(H)(1).  Therefore, in the present case, the plaintiff has not stated a claim upon which relief can be granted under O.R.C. 4112.02(H)(1).

### B.  Do monthly payments on a discriminatory loan constitute a "continuing violation" of a claim for aiding and abetting discriminatory conduct under R.C. 4112.02(J)?

Counts One, Two, Three, and Five of the first amended complaint allege a claim for aiding and abetting discriminatory conduct under O.R.C. 4112.02(J).  These claims are barred by the applicable statute of limitation.

OCRC's ability to seek relief is subject to a charge being filed in compliance with the statute of limitations. Ohio Civ. Rights Comm'n v. Fairmark Dev., Inc., No. 08-AP-250, 2008-Ohio-6511, *¶18-19 (10th Dist. 2008).  In other words, if an individual does not timely file a charge with the OCRC, then the OCRC cannot file a civil action on that individual's behalf.  In the present case, O.R.C. 4112.05 (b)(1) is the applicable section, and states:

> Any person may file a charge with the commission alleging
> that another person has engaged or is engaging in an

8

> unlawful discriminatory practice. In the case of a charge
> alleging an unlawful discriminatory practice described in
> division . . . (J) of section 4112.02 . . ., the charge shall be in
> writing and under oath and shall be filed with the commission
> within six months after the alleged unlawful
> discriminatory practice was committed.

Therefore, an individual must file a charge alleging a violation of O.R.C. 4112.02(J)

within six months of the alleged wrongdoing in order for the OCRC to comply with the

applicable statute of limitations.

In the present case, Ms. Sykes-Jackson executed the Note and Mortgage on 24

January 2007, but did not file the Initial Charge with the OCRC until 23 January 2008.

The plaintiff filed the initial charge beyond the six months permitted and therefore, the

OCRC is barred from filing claims under O.R.C. 4112.02(J).

The plaintiff objects to this reasoning, or at least contends the above claims are

timely because Ms. Sykes-Jackson continued to make payments under the Note and

that her continuing payments constituted a  continuing violation.  Plaintiff's theory,

however, fails as a matter of law.

In discriminatory lending claims, the conduct giving rise to the discrimination

claim is the issuance of the unfavorable, discriminatory loan and payments

made on the loan do not constitute separate violations.  In Hernandez v. Sutter West

Capital, No. 09-03658-CRB, 2010 U.S. Dist. LEXIS 88109, at *9-10 (N.D. Ca. 2010), the

court stated that "payments Plaintiff made pursuant to the loans were effects of any

violation, not new violations in their own right".  In King v. Ameriquest Mortg. Co., No.

PJM 09-977, 2009 U.S. Dist LEXIS 102270, at *8-9 (D. Md. 2009), the court stated that

"the payment on his mortgage each month does not result in continuous fraud. What is

9

involved is the lingering effects of a unitary action that occurred when he executed the

mortgage."  In Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHXJAT,

2009 U.S. Dist. LEXIS 87997, at *20-21 (D. Az. 2009), the court stated that the "issuing

of the loans were one-time acts; [a] continuing violation is occasioned by continual

unlawful acts, not by continual ill effects from an original violation."  Indeed, the legal

authority decidedly favors the defendant's position.  Further, adopting a contrary

position would produce unwieldy results.  As the defendant notes in its reply brief:

> If each monthly payment on a loan made contrary to the terms of a
> statute was another violation, then a one year loan would have 12
> violations.  If that is so, then there would be a single loan that would
> give rise to 12 claims, not one.  A typical residential mortgage
> would have a statute of limitations that would extend 30 years.  The
> continuing violations theory simply makes no sense in this context.

(Doc. 13; Reply Brief)

Even if Ms. Sykes-Jackson continued to make payments under the Note, this

behavior would not extend the statute of limitations for her claims under O.R.C.

4112.02(J).  These claims are time barred.

There is, however, one claim alleging a violation of O.R.C. 4112.02(J), which

may not fall within the above framework.  The Supreme Court of Ohio has observed that

a cause of action under O.R.C. 4112.052 is distinct from other causes of action under

O.R.C. Chapter 4112 in that 4112.052 was primarily designed to redress public wrongs,

unlike other provisions in the chapter that are primarily designed to redress individual

wrongs.  See Cosgrove v. Williamsburg of Cincinnati Mgt. Co., 70 Ohio St.3d 281, 289

(Ohio 1994).  Because of that distinction, O.R.C. 4112.052 need not be construed with

other statutes, including those that contain a limitations period.  Id.

10

In the present case, the above logic may theoretically apply to one of plaintiff's claims brought pursuant to O.R.C. 4112.052.  However, as discussed in Section D below, this claim fails independently as a matter of law.

### C. Has the plaintiff pled a claim for reverse-redlining under O.R.C. 4112.02(H)(3) and (5)?

The plaintiff has asserted claims under O.R.C. 4112.02(H)(3) and (5).  These statutory provisions are analogous to 42 U.S.C. §3605 of the Fair Housing Act, and both prohibit reverse redlining discrimination in the refinancing of owner-occupied homes.

To state a claim for reverse redlining, the plaintiff must allege:

> (1) that he or she is a member of a protected class; (2) that he or she applied for and was qualified for loans; (3) that the loans were given on grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms.  In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of [a protected class], the plaintiff need not also show that the lender makes loans on more favorable terms to others.

Matthews v. New Century Mortg. Corp., 185 F. Supp. 2d at 886-87 (S.D. Ohio 2002).

Thus, to state a claim under these statutes, the first amended complaint must allege facts showing that: (1) Ms. Sykes-Jackson is a member of a protected class; (2) Ms. Sykes-Jackson applied for and was qualified for credit; (3)  Ms. Sykes-Jackson was given credit on unfavorable terms; and (4) Wells Fargo continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms or that Wells Fargo intentionally targeted her for unfair loans on the basis of her race and

11

her neighborhood.  See Matthews, 185 F. Supp. 2d at 886-87; Eva, 143 F. Supp. 2d at 891.

In the present case, the defendant argues that the first amended complaint has not alleged the requisite facts under the above four part test. Specifically, Wells Fargo asserts that absent from the first amended complaint are any facts showing that similarly situated non-minority borrowers received "significantly more favorable terms" or that Wells Fargo intentionally targeted the plaintiff for unfair loans on the basis of her race. Matthews, 185 F.Supp. 2d at 886-87.  The Court disagrees, and the plaintiff's claims under O.R.C. 4112.02(H)(3) and (5), therefore, survive the motion to dismiss.

In order to satisfy the fourth prong of the above-described test, courts have readily adopted evidence of targeting to replace comparisons of the treatment of minorities with the treatment of non-minorities.  Specifically, courts have found the following conduct sufficient to satisfy the targeting element: advertising featuring minority consumers; placing ads in community newspapers that serve a minority community while not advertising in community papers that are part of the same newspaper chain but serve primarily white neighborhoods; only showing housing stock in minority neighborhoods; being paired with African-American salesmen; and recruiting customers through members of African-American churches.[2]  Barkley v. Olympia Mortgage Co., 2007 U.S. Dist. LEXIS 61940, *35-36 (E.D. N.Y. 2007).  Further, the court in Hargraves v. Capital City Mortgage Corp.,140 F.Supp.2d 7, 2022 (D.D.C.2000) found targeting sufficiently pled where the complaint included the "defendants'

_____

[2]To reiterate, this conduct has been found sufficient to satisfy the fourth prong of the four part test. In and of itself, this conduct does not constitute reverse redlining.

12

solicitation of brokers who operate predominately in the black community, their distribution of flyers and advertisements in black communities, the decision to place their offices in black communities, and the fact that a picture of [defendant's president] standing next to former Mayor Marion Barry, Reverend Jesse Jackson, and former District of Columbia Council member Arrington Dixon hung just inside [defendant's] office entrance."

Similarly, in the present case, the plaintiff has alleged specific conduct which could support an inference of intentional targeting.  The first amended complaint alleges that Wells Fargo "encourages undercapitalized brokers, like Assured [and Conglomerated]," who "maintain strong customer relationships in the African-American community" to close loans "with abusive and unfavorable terms" where the loans are then "purchased and serviced by [Wells Fargo]."  (First amended complaint ¶3-5, 13, 54, 58-59, 65, 73, 74, 82, 90, 92, 95, 101, 102).  The first amended complaint further alleges that 60% of the mortgages assumed by Wells Fargo through Assured and Conglomerated were secured by property in zip codes that were more than 50% African-American.  At the motion to dismiss stage of the proceedings, these facts are more than sufficient to satisfy the fourth prong of the plaintiff's reverse-redlining claims.

The plaintiff's reverse redlining claims alleging violations of O.R.C. 4112.02(H)(3) and (5), and contained within Count Two of the first amended complaint, state claims upon which relief could be granted and, therefore, survive the defendant's motion to dismiss.

13

**D. Does a complaint for a pattern or practice of discrimination claim state a claim where it only identifies adverse action against a single borrower?**

Count Four of the first amended complaint alleges that, in violation of O.R.C. 4112.02(H)(1), (3), and (5), Wells Fargo engaged in a pattern or practice of discrimination by purchasing loans from brokers who operate in African-American neighborhoods and who impose adverse loan terms regardless of the qualifications of the applicants. Count One alleges that Wells Fargo violated O.R.C. 4112.052. O.R.C. 4112.052 is analogous to 42 U.S.C. Section 3614, and makes it unlawful to discriminate if (1) there exists a pattern or practice of discrimination or (2) a group of persons has been denied rights and the denial raises an issue of public as opposed to individual wrongs. This claim fails.

Wells Fargo argues that a pattern or practice of discrimination claim requires factual allegations of more than one supposedly improper loan, and that there is only one supposedly improper loan in the present case. This Court agrees and therefore, the plaintiff's pattern or practice claim will fail.

The plaintiff objects to the above reasoning and cites United States v. Sturdevant, 2009 U.S. Dist. LEXIS 37446 (D. Kansas 2009), to support the proposition that a pattern or practice claim does not require more than one improper loan. However, the plaintiff's interpretation of Sturdevant is incorrect.

To be sure, the Sturdevant court did state that each case must turn on its own facts and that courts have uniformly refused to establish a minimum threshold number of incidents which must occur before the government can bring a pattern or practice claims. The underlying assumption in Sturdevant, however, was that there is a

14

minimum threshold number of incidents, that number is some number greater than one, and after this threshold is breached there is no further minimum threshold.  Indeed, Sturdevant and the cases the Sturdevant court cites to support its conclusion all involved two or more incidents.  In United States v. Habersham Props., Inc., 319 F.Supp. 2d 1366 (1372-73 (N.D. Ga. 2003), a local housing organization tested the defendants apartment building *five* times in just over one month.  In United States v. Ramsey, 331 F.2d 824, 843 n. 19&20 (5th Cir. 1964), the court stated that the number of discriminatory acts need not be *great*.  In United States v. Balistrieri, 981 F.2d 916, 930 (7th Cir. 1992), there were six instances during the year.  In United States v. Mintzes, 304 F.Supp.1305, 1314-15 (D. Md. 1969), there were three incidents. This reading also does not conflict with the meanings of the words pattern or practice, which denote some measure of repetition.

The plaintiff further contends that its pattern or practice claims are supported by proof that Wells Fargo adopted a discriminatory policy.  To be sure, in United States v. Garden Homes Mgmt. Corp., 156 Supp. 2d 413 (D. N.J. 2001), the court stated that "proof that a party adopted a discriminatory policy satisfies the Fair Housing Act's pattern and practice requirement."  However, in the present case, the plaintiff has not shown, by any measure, that Wells Fargo adopted a discriminatory policy.  The first amended complaint states that Wells Fargo works with Assured and Conglomerated, and that these entities "maintain strong customer relationships in the African-American community."  However, this does not show a discriminatory policy; rather, it may show that Wells Fargo intentionally targeted African-Americans with its business.  The first amended complaint describes the use of adjustable rates and prepayment riders; a

15

balloon payment as the 360th installment that is 71% of the original loan; and a loan

amount that exceeds the appraised value of the property.  However, a description of

*one* allegedly improper loan is not sufficient evidence of a discriminatory policy.

The plaintiff also argues that a pattern or practice claim can rest solely on the fact

that a group has been denied housing rights and that the denial raises an issue of public

importance.  However, even assuming this case involves a matter of public importance,

the plaintiff does not constitute a group and as discussed above, the plaintiff has only

presented evidence of *one* improper loan.


### E. Has the plaintiff sufficiently pled a disparate discriminatory impact claim?

Count Five of the first amended complaint asserts that Wells Fargo's practices

caused a disparate impact.  Specifically, the plaintiff contends that Wells Fargo engaged

in discriminatory lending practices that have had a disparate impact upon African-

American neighborhoods in violation of O.R.C. 4112.02(H)(1), (3), and (5), and

4112.02(J).

In Little Forest Medical Center of Akron v. Ohio Civil Rights Commission, 61 Ohio

St. 3d 607 (Ohio 1991), the Ohio Supreme Court held that "where facially neutral criteria

are applied and the application of the criteria results in discriminatory consequences to

members of the protected class, such practices are said to produce a 'disparate impact'

upon the affected individuals."  Id. at 610.  Citing Watson v. Fort Worth Bank &  Trust,

487 U.S. 977 (1988), the court noted that, in a disparate impact case, discriminatory

motive was irrelevant.  Further, Ohio courts have established that the above legal

16

framework is applicable in the context of housing discrimination.  <u>Toledo Fair Housing</u>
<u>Center v. Nationwide Mutual Insurance Company</u>, 94 Ohio Misc. 2d 151 (Lucas Cty.
C.P. 1997).

Applying the above legal framework to the present case, the plaintiff has the
burden to 1) identify and challenge a specific housing practice, and 2) show that the
practice had an adverse effect on members of a protected class by offering statistical
evidence of a kind or degree sufficient to show that the practice in question has caused
the adverse effect in question.  <u>Graoch Assocs. # 33, L.P. v. Louisville/Jefferson County</u>
<u>Metro Human Rels. Comm'n</u>, 508 F.3d 366, 377 (6th Cir. 2007).  Assuming, in arguendo,
that the plaintiff has sufficiently delineated a specific housing practice of Wells Fargo,
she, nonetheless, has failed to show that it has had an adverse effect.  In other words,
the plaintiff has not shown that the defendant's housing policies adversely impacted the
African-American area in question more than similarly-situated, non-
minority areas.  The defendant stated in its Motion to Dismiss.

> The First amended complaint alleges that 30% of Wells Fargo
> loans in the Cleveland metropolitan area were "high cost" but
> nothing in that statistic shows the racial make-up of the borrowers .
> . . The First amended complaint alleges that Wells Fargo was the
> "plaintiff in 75% of foreclosures occurring in zip codes where
> African-Americans were 55% or more of its population," but nothing
> compares that statistic to Wells Fargo's role as a plaintiff in
> foreclosures in similarly-situated, non-minority areas.  The First
> amended complaint alleges that Wells Fargo ranked third among
> the top five lenders responsible for 70% of the high cost subprime
> foreclosed loans in Cuyahoga County, but again nothing in that
> statistic is connected to Cuyahoga County's predominantly African-
> American neighborhoods, or shows that Wells Fargo made a
> greater percentage of its loans in such neighborhood than other
> subprime lenders.

(Doc. 9; Motion to Dismiss).

17

Indeed, the above statistics do not support the comparisons necessary to state a disparate impact claim.  Notably absent are statistics supporting the claim that Wells Fargo made a higher percentage of "high cost" loans in African-American communities than in a similarly situated, non-minority community.  Therefore, the plaintiff has not sufficiently pled a disparate discriminatory impact claim.


**Conclusion**

For the reasons set forth above, this Court grants the defendant's motion to dismiss in part and denies it in part.

Specifically, this Court dismisses each of the plaintiff's claims brought pursuant to O.R.C. 4112.02(H)(1), 4112.02(J), and 4112.052, and the plaintiff's disparate impact and pattern or practice claims brought pursuant to O.R.C. 4112.02(H)(3) and (5).  The plaintiff's reverse redlining claims alleging a violation of O.R.C. 4112.02(H)(3) and (5), and contained within Count Two of the first amended complaint, state claims upon which relief can be granted and, therefore, survive the defendant's motion to dismiss.


IT IS SO ORDERED.

/s/ Lesley Wells_____
UNITED STATES DISTRICT JUDGE
